ANNIE PAYNE *vs.* SPRINGFIELD STREET RAILWAY
COMPANY.

PETER PAYNE *vs.* SAME.

Hampden.   September 28, 1909. — October 21, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Negligence. Street Railway. Carrier. Practice, Civil,* Rulings and instructions, Conduct of trial. *Evidence,* Remoteness, Opinion: experts.

In an action by a woman against a street railway company for personal injuries from being thrown to the ground by reason of the negligence of the defendant's servants in suddenly starting a car when the plaintiff was attempting to board it as a passenger, the plaintiff testified that, when the accident occurred, she had put both feet on the step and with both of her hands on the grab irons was in the act of raising her left foot from the step to the floor of the vestibule. The defendant introduced evidence to show that after the car had started the plaintiff grabbed the handles and tried to board it and was thrown down. The judge, in instructing the jury, told them that if the plaintiff, as the defendant contended, was "attempting to get on to the car after it started, not having touched the car at all, no matter how near she was, until it started, then you might or might not say she was in the exercise of due care." After having retired, the jury returned for further instructions upon the question, "What constitutes becoming a passenger, with regard to taking hold of the handles." The judge only answered the question in the language of a former opinion of this court by saying, "When there has been an invitation on the part of the carrier by stopping for the reception of a passenger any person actually taking hold of the car and begin-

ning to enter it is a passenger." The defendant did not except to this portion of the charge, unless it was inconsistent with some ruling requested by the defendant and refused by the judge, which was found by this court not to have been the case. It was stated, that, if an exception had been taken to this portion of the charge and the judge had left it unamended, the exception must have been sustained on the ground that the instructions given were deficient in not telling the jury that, if they believed that the plaintiff undertook to seize the grab handles after the car had started and without her having been seen either by the motorman or the conductor, she was not a passenger.

It is proper for a presiding judge to refuse to give an instruction which, even if correct, would mislead the jury as to the issue on which their verdict is to be rendered.

If a person wishing to board a street car approaches it from the rear or somewhat diagonally from the rear, without being seen by the motorman, and does not come into view of the conductor until after the signal to start has been given, and such person in attempting to board the car is injured from being thrown to the ground by the starting of the car before he is firmly upon it, he cannot recover for his injuries thus caused, although he took hold of the car before it started.

Attempting to board a street car which has just started and is barely moving is not negligence as matter of law, even if the person thus attempting to board the car is encumbered with bundles.

In an action by a woman for personal injuries alleged to have been caused by the negligence of the defendant, upon the question of damages the plaintiff introduced evidence tending to show that as a result of the accident she was paralyzed on the right side and "had lost the sense of smell, taste, sight and hearing." The defendant introduced evidence to show that the plaintiff had not in fact become paralyzed or lost the senses mentioned, but by reason of hysteria, a suggestive disease, thought that she had. A physician testified, as a witness for the defendant, that he had treated the plaintiff professionally for six years before the accident, and that in his opinion she was suffering from hysteria, "that heredity plays a part in the matter of hysteria," and that hysteria and other neurotic diseases may be transmitted from parents to offspring. It appeared from the defendant's evidence that the plaintiff was one of a family of ten children. The physician had testified that "two or three of the sisters of the plaintiff were neurotics." At the close of the evidence the judge ordered that this testimony be stricken out, saying, "If there had been evidence that a father or a mother had it, I might have ruled differently; but two or three — whether brothers or sisters — out of ten, in my judgment, under the circumstances, does not warrant my having received that evidence." Upon an exception by the defendant, it was *held*, that the testimony stricken out well might have been found by the presiding judge to be too remote from the issue on trial.

Two ACTIONS OF TORT against the Springfield Street Railway Company, the first by Annie Payne, a married woman, for personal injuries alleged to have been caused by the negligence of the defendant's servants in suddenly starting a car while she was upon the step attempting to board the car as a passenger on the evening of March 23, 1907, near the corner of Main Street and Taylor Street in Springfield, and the second by Peter

Payne, the husband of the plaintiff in the first case, for loss sustained by him by reason of her injuries.   Writs dated August 9, 1907.

In the Superior Court the cases were tried together before *King*, J.   The facts which appeared in evidence are stated in the opinion.

The sixth, seventh, eighth, thirteenth, fourteenth, fifteenth and sixteenth rulings requested by the defendant in the case of Annie Payne were as follows:

" 6.   Whether or not a person has become a passenger upon a street car depends upon the rules of contract and that after having come to a stop the carrier may withdraw the invitation to board the car at any time before the prospective passenger has come in contact with the car.

" 7.   The defendant had the right to withdraw its offer to carry the plaintiff at any time before she came in actual contact with the car and start the car at any time before such contact was made.

" 8.   Whether or not a person has become a passenger upon a street car depends upon the rules of contract and that after having come to a stop the carrier may withdraw the invitation to board the car at any time before the prospective passenger has come in contact with the car and though the next act of the person may be to take the handle of the car preparatory to boarding the car."

" 13.   If the jury are not able to determine whether or not the plaintiff took hold of the car after it had started, they then must return a verdict for the defendant.

" 14.   The plaintiff must satisfy the jury with a fair preponderance of the evidence that she undertook to board the car before it started.

" 15.   If the jury find that the plaintiff approached the car from the rear or somewhat diagonally from the rear and did not come into view of the conductor or any competent person who might have been on the rear of the vestibule and on the lookout for passengers until after the signal to start had been given she cannot recover although she took hold of the car before it started.

" 16.   If the jury find that the plaintiff approached the car from the rear or somewhat diagonally from the rear and did not

come into view of the conductor or any competent person who might have been on the rear vestibule and on the lookout for passengers until after the signal to start had been given she cannot recover, although she took hold of the car before it had started, unless the defendant was negligent in not stopping the car the second time, or stopped it improperly."

In the bill of exceptions in Annie Payne's case number fifteen was printed after number sixteen. In the bill of exceptions in Peter Payne's case two rulings were numbered fifteen. The second of these was the same as number fifteen in Annie Payne's case, which is printed above, and the first was the same as number fourteen in Annie Payne's case, which also is printed above. The judge refused to make any of these rulings. So much of the charge as is material to the exceptions is stated in the opinion.

The jury returned a verdict for the plaintiff in the first case in the sum of $3,500, and for the plaintiff in the second case in the sum of $1,000. The defendant in each case alleged exceptions, which are described in the opinion, including an exception to an order of the judge striking out certain testimony from the evidence.

The cases were submitted on briefs.

*H. W. Ely & J. B. Ely*, for the defendant.

*W. H. Brooks & W. Hamilton*, for the plaintiffs.

LORING, J. These are two actions of tort brought for injuries suffered by the plaintiff in the first action while she was trying to board one of the defendant's cars. The second action is brought by her husband, and is founded on the same accident. We shall speak of Mrs. Payne, the plaintiff in the first action, as the plaintiff.

The plaintiff's case was that as the car in question approached a white post on Main Street in Springfield, where she with a companion was waiting for a car, she stepped into the street and signalled to the motorman by putting up her hand; that "she saw the motorman look right down at her like that (indicating) and shake his head"; that after that the car slowed down and stopped; that when it stopped the rear of it was ten or twelve feet beyond the white post; that she and her companion followed up behind, walking diagonally across the street; that she un-

dertook to get on board and for this purpose put both feet on the step, and after putting her bundles on the floor of the vestibule, with both hands on the grab irons was in the act of raising her left foot from the step to the floor of the vestibule, when the car started with a jerk, and threw her back into the street. Evidence was introduced in her behalf that she was unconscious until she got nearly to her house; that she lost four or five teeth, and as a result of the accident was paralyzed on the right side and "had lost the sense of smell, taste, sight and hearing."

The defendant's case was that the plaintiff did not signal the car by holding up her hand for the motorman or otherwise; that the car came to a stop because a car, or cars, ahead of it were brought to a standstill for some two minutes, by a car in front crossing the track at right angles, to go down Main Street in the opposite direction; that while the car which the plaintiff undertook to board was waiting for a clear track, some two or three people got on and the plaintiff came up from behind to get on also; that the car then started, and after it had started she grabbed the handles, tried to board the car and was thrown down; that the injuries which this caused were slight; that she had not in fact become paralyzed and lost the sense of smell, taste, sight and hearing, but thought she had; or, as one of the witnesses for the defendant put it, she had hysteria, a suggestive disease; that a person who has hysteria, on being examined and an injury or trouble suggested, assumes that trouble.

It appeared that at the time here in question the conductor was taking fares in the forward part of the car, and on hearing two bells from the motorman indicating that the track was clear, called out "All right?" and on some one's answering "All right," rang the bell for the car to start.

The presiding judge instructed the jury that a person does not become a passenger when he signals the car, nor when he is crossing from the sidewalk to take it; that the company has not accepted him then, but that when for the purpose he goes toward it (after it has stopped at a regular stopping place for the receipt of passengers) and takes hold of it and comes in contact with it in the process of entering it, then at least he is a passenger; that if the jury believed the evidence introduced by the plaintiff they could find that the plaintiff had become a passenger.

The judge then took up the legal aspect of the case if they believed the defendant's evidence. His charge on that aspect of the case was in these words: "It [the defendant] claims, as I understand it, that, the car having passed north of the white post, . . . stopped not for the purpose of receiving passengers but to permit a car to come out of Lyman Street, to pass the cross-over, on to the west track of Main Street, and thus south; that it waited, and that while it thus waited certain passengers (a couple) got on, because the car had stopped, although not at the usual stopping place; that after they had gotten on a certain interval occurred of indefinite length, — I mean the witnesses vary, — but just as the car was starting, the conductor not knowing and not having reason to believe that anybody was entering then, that then they [the plaintiff and her companion] reached the car [and it started] before she [the plaintiff] had touched it, and that she seized the grab handles and attempted to get on after it started. Now, if that is the state of facts, then a different rule might apply, and you will have to determine as one of the facts in this case what she was doing. If she was doing what the defendant claims, — attempting to get on to the car after it started, — not having touched the car at all, no matter how near she was, until it started, then you might or might not say she was in exercise of due care."

Later the jury came in for further instructions and submitted the following question to the presiding judge: "'What constitutes becoming a passenger, with regard to taking hold of the handles?' meaning of the car." To this the judge gave this instruction, "Gentlemen, the Supreme Court has recently answered that question, and I had purposed in the charge to read the answer but I overlooked it. The court recently said this: 'We are unwilling to go farther than the doctrine stated in *Davey* v. *Greenfield & Turners Falls Street Railway*, 177 Mass. 106, that when there has been an invitation on the part of the carrier by stopping for the reception of a passenger any person actually taking hold of the car and beginning to enter it is a passenger.'* That is all they have said. They have said in an earlier case that simply to have an intention to enter is not suffi-

---

* *Duchemin* v. *Boston Elevated Railway*, 186 Mass. 353, 357.

cient.   They said in a case from which I think I read you some-
thing further, but I think I will charge you nothing further
than that."

1. The instructions given were deficient in not telling the
jury that if they believed that the plaintiff undertook to seize
the grab handles after the car started and without her having
been seen either by the motorman or the conductor, she was
not a passenger.   If the defendant had taken an exception to
this portion of the charge it would have had to be sustained.
But the defendant did not do so.   The statement of the excep-
tions taken by the defendant is in these words: " The court
declined to give such requests or any of them or to so rule except
as set forth in the charge to the jury hereto annexed, to all
of which rulings and refusals to rule, as requested, and to all
rulings inconsistent with said requests, the defendant excepted,
[and] now excepts."   The defendant asked for eighteen rulings,
which are set forth in the bill of exceptions.

The only questions before us therefore are whether the judge
was wrong in refusing to give the rulings asked for and whether
the error made in the charge is covered by any of these rulings.
The defendant contends that the sixth, seventh, eighth, thirteenth,
fourteenth, fifteenth and sixteenth rulings asked for should have
been given, and that the error in the charge was fairly covered
by them.

The sixth, seventh and eighth requests do not cover the point
and were rightly refused.   They deal with the withdrawal of
an invitation which has been held out by the carrier.   The
defendant's case was that no invitation had been given to the
plaintiff to become a passenger because the car was stopped for
other purposes, and that the plaintiff was not seen either by the
conductor or by the motorman.   In such a case the question is
not the question of the withdrawal of an invitation which had
been extended.

The thirteenth ruling asked for does not cover the point and
was properly refused.   The case at bar is not a case which turned
on the car's having started or not just before or just after the
plaintiff seized the grab irons.   But it turned on the fact of an
invitation's having been or not having been extended to the plain-
tiff.   To have given the thirteenth ruling asked for (if correct)

would have misled the jury as to the issue on which their verdict was to be rendered.

The defendant contends that the sixteenth ruling and the ruling numbered fifteen in the action brought by Annie Payne, and the second ruling numbered fifteen in the action brought by Peter Payne, cover the point and should have been given. But the difficulty with those rulings is that they do not exclude the motorman's having seen the plaintiff. Those rulings would have had to be given had the defendant inserted the words " without the motorman's having seen her."

2. The defendant asked the judge to instruct the jury " that for a woman such as this plaintiff encumbered with bundles as was this woman to attempt to board a moving car is lack of due care as a matter of law." The same ruling was asked for in the first request numbered fifteen in the action brought by Peter Payne and in that numbered fourteen in the action brought by Annie Payne. If the car was just starting and was barely moving, we do not think attempting to board it is negligent as matter of law. In *Marshall* v. *Boston Elevated Railway*, 203 Mass. 40, and in *Block* v. *Worcester*, 186 Mass. 526, where the car had not come to a stop, it was held to be for the jury to say whether the plaintiff had been guilty of negligence which contributed to the injury.

3. The last exception is to the action of the presiding judge in striking out the testimony of Dr. Downey. Dr. Downey, who was called by the defendant, testified that he treated the plaintiff professionally six years before the accident, during pregnancy and over her confinement; " that at that time she was a highly nervous neurotic woman "; and " that she had a severe uterine condition." He gave it as his opinion that the plaintiff was suffering from hysteria; " that hysteria is a disease of suggestions, a suggestive disease, and every time a patient is examined or an injury or trouble suggested to them they may, without being conscious of it, assume that trouble." He also testified " that heredity plays a part in the matter of hysteria; heredity is a condition of organism or otherwise that is transmitted from father or other parents to their off-spring; that a father or mother who has, possibly, hysteria or any of the neurotic diseases are liable to be seen in some

form in their offspring." Further, on direct examination he testified that he had treated three of the plaintiff's sisters professionally, and that " the others " had worked for him as domestics; that in his opinion these brothers and sisters, " to the number of more than three," have hereditary traits in common ; that " this family " have " a common hereditary trait," namely, " They are all of neurotic temperament; nervous temperament "; and that " Those are the only temperaments that are right to take on suggestion." On cross-examination he testified that if two or three in a family of ten became nervous he would not say that it was hereditary ; that he did not know that the plaintiff was one of a family of ten ; that he never had seen the brothers of the plaintiff, and that the two sisters of the plaintiff who testified in this case did not seem to be nervous. It would seem from his testimony that one of the two sisters who testified in the case was one of the three stated by him on direct examination to have been under his care professionally. It also appeared from the defendant's evidence that the plaintiff was one of a family of ten. At the close of the evidence the judge directed the testimony of Dr. Downey " that two or three of the sisters of the plaintiff were neurotics," to be stricken out. In directing this to be stricken out the presiding judge said : " If there had been evidence that a father or a mother had it, I might have ruled differently ; but two or three — whether brothers or sisters — out of ten, in my judgment, under the circumstances, does not warrant my having received that evidence."

It is apparent from his cross-examination that the opinion expressed by Dr. Downey on his direct testimony was not based upon the facts of the case at bar. Apart from that the fact that two or possibly three out of ten children had become in middle age nervous might well be found by the presiding judge to be too remote from the issue on trial, to wit: Had the plaintiff in fact become paralyzed and lost the sense of smell, taste, sight and hearing, or did she merely think she had ?

*Exceptions overruled.*