ANNIE L. GARDNER *vs.* BOSTON ELEVATED RAILWAY
COMPANY.

FREDERICK M. GARDNER *vs.* SAME.

Suffolk.    November 10, 1909. — January 7, 1910.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Negligence. Street Railway. Carrier,* Of passengers. *Evidence,* Relevancy, Opinion: experts. *Witness,* Impeachment of.

The degree of care which a common carrier of passengers owes to such passengers is the utmost care which is consistent with the nature of the carrier's undertaking with a due regard for all other matters that ought to be considered in conducting the business; and, in an action against a corporation operating a street railway, for personal injuries alleged to have been incurred while the plaintiff was a passenger on a car of the defendant, it is error for the presiding judge to instruct the jury that the defendant's duty as a common carrier required it to exercise toward its passengers the highest degree of care which could be exercised "consistent with the operation of the road," this being an insufficient statement of the limitations upon the liability of a carrier of passengers.

In an action by a woman against a corporation operating a street railway, for personal injuries alleged to have been incurred while the plaintiff was a passenger on a car of the defendant, a nerve specialist, who was called as a witness by the plaintiff, testified that he examined the plaintiff at the request of her family physician and that in his opinion the plaintiff was suffering from traumatic neurosis, for which the accident as described would be an adequate cause. On his cross-examination he testified to statements, which he had made in an article previously written about litigation for accidents and nervous affections in connection therewith, and which might be found by the jury to affect the weight of his reasons for the opinion which he had given in his direct examination and the weight of the opinion itself. The judge in his charge so instructed the jury as to exclude from their consideration the statements made by the specialist in the article referred to. *Held,* that the exclusion was erroneous.

TWO ACTIONS OF TORT, the first by a married woman against a corporation operating a street railway, for personal injuries alleged to have been incurred while the plaintiff was a passenger on a car of the defendant on Massachusetts Avenue at the corner of Boylston Street in Boston on January 26, 1906, and the second action by the husband of the plaintiff in the first action for medical expenses and loss of consortium caused by her injuries.    Writs dated May 15, 1906.

In the Superior Court the cases were tried together before

*Bond*, J. The plaintiff in the first case testified, among other things, that at about four o'clock in the afternoon of the day named above she waited to take a car for South Boston; that she was waiting on the Post Office side of Massachusetts Avenue; that a car came in from South Boston on the right hand track, that is, the track nearer to her; that the car came to a stop at the regular stopping place there; that, after stopping, the trolley was taken around to the other end of the car ready to start in the opposite direction, toward South Boston, along Massachusetts Avenue; that other passengers had boarded the car; that she went to the rear end and put one foot on the step; that the conductor was on the rear platform with his back to her as she started to get on; that, while she had one foot on the step and was just bringing up the other foot from the ground to the step, the conductor without looking around toward her rang two bells and the car started suddenly; that she grasped with her right hand the grab handle on the dasher on the car and was swung out and twisted around striking her back and right arm against the dasher and partially throwing her off; that a passenger on the rear platform took hold of her and prevented her from falling and a second passenger tried to help her; that somebody shouted and the car went along for a block when the conductor stopped the car; that when it stopped the two passengers mentioned helped her to get upon the car; and that she then went into the car and sat down.

One Dr. Richardson, mentioned in the opinion, testified that he was a nerve specialist, and that he examined the plaintiff on September 19, 1906, at the request of her family physician. Besides the testimony of this witness which is stated in the opinion, he testified that, so far as he knew, there was nothing the matter with the plaintiff when he examined her except the nervous trouble which he had described; and that it was from the objective and subjective symptoms, coupled with her history of the case, that he made his diagnosis of traumatic neurosis.

On cross-examination, he then was asked the following questions and answered them as follows: " Q. Did you write an article a few years ago entitled ' Accident Litigation — A popular Graft'? A. I did, sir. — Q. Did you in that, write ' Neu-

rologists are now practically agreed that a special form of neurosis excited by trauma does not exist, but the term traumatic neurosis has come to be generally applied to this particular class of cases ' ?   A. That is correct quite so. — Q. Did you say in this article ' Litigation is undoubtedly a potent causative factor in the production and prolongation of these functional neuroses ' ?   A. That is quite true, sir. — Q. This is a functional neurosis?   A. I believe it to be. . . . — Q. Did you say in that article ' It will frequently become your duty to discriminate between unconscious exaggeration and that variety of exaggeration which is the outcome of avaricious desire for litigation graft ' ?   A. I did. . . . — Q. Did you say, also, in the article referred to, that ' In litigation cases in which there exist the strongest motives for exaggeration or deceit, it is imperative that the physicians be cautious about too unreservedly accepting the patient's statements ' ?   A. I did say so."

The effect of the portion of the judge's charge in regard to the statements which Dr. Richardson on his cross-examination testified were contained in the article written by him is stated in the opinion.  The portion of the charge in regard to the defendant's duty as a common carrier of passengers is there quoted.

At the close of the charge the defendant excepted to so much of it as related to the degree of care required of the defendant and also to so much of it as related to the evidence of Dr. Richardson.  The jury returned a verdict for the plaintiff in each case, in the first case in the sum of $3,000, and in the second case in the sum of $1,500.  The defendant alleged exceptions.

The cases were submitted on briefs.

*F. Ranney & E. B. Horn*, for the defendant.

*J. H. Baldwin*, for the plaintiffs.

SHELDON, J.  The female plaintiff seeks to recover for personal injuries alleged to have been caused to her by the sudden starting of one of the defendant's cars, while she was stepping into it, through the negligence of the conductor.  On the evidence the case was one for the jury to pass upon.

1. The defendant contends that the judge at the trial, in charging the jury upon the issue as to the defendant's negli-

gence, set the standard of its duty too high; and we are of opinion that this complaint is well founded. The judge said to the jury: "The common carrier has a duty with reference to the passengers, which is to exercise the highest degree of care which can be exercised by human agency, consistent with the operation of the road. It is not the care of ordinary prudence; it is the highest degree of care which a man can exercise with reference to running his car; and the failure of the conductor to exercise proper care is the negligence of the road. . . . It was the duty of the conductor to observe whether people were getting on or off the car when the car was stopped, and to give the passengers a reasonable time, those who were getting on the car, to get on and reach a place of reasonable safety; not that they are obliged to give them time to get to a seat, but to give them time to get to a place of reasonable safety; and if the car started without giving that time, then you consider whether that is that high degree which the law compels the common carrier to exercise; and if it was not, then the company were negligent."

It is reasonable care under the existing circumstances that one person has the right to require of another; and that degree of care becomes increased with any increase of the apparent danger involved in its absence or with the increased power of control of one of the parties whose conduct is in question. *Uggla* v. *West End Street Railway*, 160 Mass. 351. *Cunningham* v. *Hall*, 4 Allen, 268. A common carrier of passengers either by rail or by water has so complete a control and the consequences of negligence on his part may be so serious that he is justly held to a very high degree of care for their safety; and accordingly it has been often said, both in this and in other jurisdictions, that he is held to the exercise of the highest degree of care. But as was pointed out in *Dodge* v. *Boston & Bangor Steamship Co.* 148 Mass. 207, 217, 218, this phrase and similar words which have been used to convey the same idea mean simply that the carrier is bound to use the utmost care consistent with the nature of his undertaking and with a due regard for all other matters that ought to be considered in conducting the business. This conductor was not bound absolutely to exercise the highest degree of care in run-

ning his car, but only the highest degree of care which was con-sistent with the practical performance of all his duties in seeing that the car was run safely without unreasonable delays, and so as to provide for the safety and convenience and properly rapid transit of his passengers. What was required of him was the highest degree of care consistent with the practical management and operation of his car for the carriage of passengers, "or in other words, the requirement [was] reasonable care according to the nature of the contract" with the passengers. *Galligan* v. *Old Colony Street Railway*, 182 Mass. 211, 214, 215. *Carroll* v. *Boston Elevated Railway*, 200 Mass. 527. *Marshall* v. *Boston & Worcester Street Railway*, 195 Mass. 284, 286. *Millmore* v. *Boston Elevated Railway*, 194 Mass. 323. *Olds* v. *New York, New Haven, & Hartford Railroad*, 172 Mass. 73, 77.

None of these qualifications was stated to the jury in the case at bar; the rule was given to them as an absolute one without explanation other than that the care to be required must be "consistent with the operation of the road." This was not a sufficient statement of the limitations which we have mentioned. We cannot say that juries are so inclined to belittle the duties of common carriers or to hold them to so insufficient a degree of responsibility that we can regard this error as trivial or as one that may be disregarded.

2. Dr. Richardson testified in chief that in his opinion the plaintiff was suffering from traumatic neurosis, for which the accident as described would be an adequate cause. On cross-examination he testified to statements which he had made in an article previously written about litigation for accidents and nervous affections in connection therewith. Some of these statements might be found by the jury to affect the weight both of his reasons for the opinion which he had given on direct ex-amination and of the opinions themselves to which he had testified. *Snow* v. *Adams*, 200 Mass. 251.

The effect of the judge's charge as to Dr. Richardson's state-ments in this article was to exclude them wholly from the con-sideration of the jury for any purpose; and this was erroneous. There is nothing in *Payne* v. *Springfield Street Railway*, 203 Mass. 425, inconsistent with this conclusion. Of course a physician's opinion about a plaintiff's condition, formed simply

upon the cases of other persons, would not have been competent; but that was not this case.

The second case, in which the husband of the plaintiff in the first suit seeks to recover for the damages caused to him by the injury done to her, stands upon the same footing as her own case. *Lundergan* v. *New York Central & Hudson River Railroad*, 203 Mass. 460.

*Exceptions sustained.*