# COMMISSIONERS OF DELMAR, A CORPORATION.

## vs.

## JOHN S. VENABLES.

*Municipal corporations: streets, duties as to --; negligence.
Res gestæ.*

The offering of testimony, by a defendant, to prove the issue, after the Court has refused his prayer to instruct the jury that there was no evidence in the case legally sufficient to entitle the plaintiff to recover, is a waiver of his right to have the ruling reviewed upon appeal.    p. 475

. A municipality can not be made liable for injuries received owing to the condition of its streets, unless it be shown that it had actual or constructive notice of their bad condition.   p. 476

By "constructive notice" is meant such notice as the law imputes in the circumstances of the case.    p. 476

It is the duty of a municipality to exercise active vigilance over the streets, to see that they are kept in a reasonably safe condition for travel.   .    p. 476

In the exercise of such active vigilance, in keeping the streets in a reasonably safe condition for public travel, the officers of a municipality are expected to inspect the streets from time to time, and to do the repair work found necessary.    p. 476

After a street has been out of repair, so that the fact has become notorious to those traveling the street, and there has been full opportunity for the municipality, through its agent charged with that duty, to learn of that condition, and to make the repairs, the law imputes notice to it, and charges it with negligence if it fails in such duty, to the damage of someone injured thereby.                              p. 476

Where a municipality, in constructing a street, had left a stump in the bed of the street, which as the earth had been worn away by passing vehicles, was left projecting some six or seven inches above the surface, and where by the exercise of reasonable care and diligence, its officers could have learned of the dangerous condition and have corrected the same, and so have prevented an injury complained of, there was evidence of negligence on the municipality's part legally sufficient to go to the jury.                              pp. 476-477

To justify a court in saying that conduct is *per se* contributory negligence, it must present such features of negligence as to leave no opportunity for difference of opinion in the minds of ordinarily prudent men as to its imprudence.          p. 478

The fact that the person injured by the overturning of his wagon because of its being driven over a small stump of a tree that had been left projecting from the bed of the street, was riding on the top of a load of fodder, where he could not see all of the surface of the street, is not as a matter of law contributory negligence.                              p. 478

Exclamations or expressions which are the spontaneous manifestations of distress, and which naturally accompany and furnish evidence of existing suffering, are the natural language of pain, and whenever its existence at any particular time is a relevant fact is always admissible as original evidence, under the rule of *res gestæ*.                              p. 479

They are in the nature of verbal facts, and may be testified to and described by anyone in whose presence they were uttered.
                              p. 479

*Decided April 7th, 1915.*

Appeal from the Circuit Court for Wicomico County. (STANFORD, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*F. Leonard Wailes* (with a brief by *Ellegood, Freeny and Wailes*), for the appellant.

*Elmer H. Walton* (with whom was *Alonzo L. Miles* on the brief), for the appellee.

PATTISON, J., delivered the opinion of the Court.

The suit in this case was brought by the appellee against the appellant, a municipal corporation, to recover damages for personal injuries sustained by him resulting from its alleged negligence.

The appellee, with one Truitt, on the 22nd day of November, 1913, was riding on a load of fodder upon Sixth street, one of the streets of the appellant corporation, when the right wheel of the cart upon which the fodder was loaded, passed over a stump six or seven inches above the level of the road and about four inches in diameter at its top, throwing the appellee and Truitt from the cart upon the sidewalk, inflicting upon the appellee the injuries complained of. The position of the appellee was upon the top of the fodder and about over the center of the load. The cart was drawn by one horse, which at the time was driven by the appellee.

Sixth street, or at least this portion of it, was opened about two years prior to the happening of the accident, and when opened the said stump was permitted to remain in the street. The street is about twenty feet in width, with a pavement

two and one-half feet wide on the west side, but with no pave-
ment on the east side.   The stump was on the east side, in
the traveled portion of the street, about five feet from the
building line.   At the time the street was opened the stump
was in the center of a small mound or hill very little higher,
if any, than the earth surrounding it, but the vehicles upon
the street, in time, removed or wore away the earth, leaving
the stump with an elevation of six or seven inches above the
surface of the street, and this had been its condition for a
long while prior to the accident.   The appellee himself saw
it in this condition while traveling upon the street in April
or May of 1913, but the evidence does not disclose that he
afterwards saw it.   Truitt had seen the stump before the ac-
cident, but just how long before he could not say.   Sturgis
testified that "he had seen it many times before this accident
and ran into it one day and it liked to have thrown him off."
He described the stump as being "six or seven inches high
and a little over four inches across the top."   Culver, another
witness, testified that "the stump was there when the street
was opened, it was a fruit tree stump that had been culti-
vated around and a bank thrown up around it; that he ran
into it once and maybe more."   The appellee testified that
he was driving along the best he could, looking for this
stump, but, as he expressed it, "when you get upon a load of
fodder you cannot see right down where the stump is"; to
see it at all he had to see it at some little distance before he
reached it.   In describing the stump he said "it was an apple
tree stump the color of dirt as near as he ever saw a stump,
a hard stump to see, and that you had to be looking mighty
good if you didn't have any load at all" to see it.   Truitt,
who was with him on the cart, testified that the plaintiff "was
driving along with the lines to his horse in an ordinary gait,
walking his horse, when the cart struck the stump."

The appellee and Truitt are the only witnesses who testified
as to how the accident happened, either on the part of the
plaintiff or defendant.

The trial of the case resulted in a verdict for the plaintiff, upon which a judgment was entered; and it is from that judgment that this appeal is taken.

There are four exceptions to the rulings of the Court. The first and third are to the rulings upon the admission of testimony, and the second and fourth are to the rulings upon the prayers.

At the conclusion of the plaintiff's testimony the defendant asked the Court to instruct the jury that there was no legally sufficient evidence entitling the plaintiff to recover,. and upon the Court's refusal to grant it, the defendant thereafter offered testimony on its own behalf upon the issues joined.

This exception is not in this case. The taking of testimony by the defendant to sustain the issues on its part, after the refusal of the Court to grant the said prayer, was a waiver of its right to have such ruling thereon reviewed upon appeal. *Barabasz* v. *Kabat,* 91 Md. 53; *United Ry. Co.* v. *Deane,* 93 Md. 624; *New York, etc., R. Co.* v. *Jones,* 94 Md. 35; *Knecht* v. *Mooney,* 118 Md. 583.

This prayer, however, was renewed at the conclusion of all the evidence in the case and with it another prayer was offered by the defendant asking the Court to take the case from the jury because of the alleged negligence of the plaintiff directly contributing to the injury. It is urgently insisted by the appellant that the Court erred in its rulings upon these prayers, and it is upon such rulings that the appellant chiefly relies for a reversal of the judgment.

It cannot be successfully contended that there was no, legally sufficient evidence to go to the jury tending to show negligence on the part of the defendant when we apply to the facts disclosed by the record the well settled law of this State in relation to the legal sufficiency of evidence as laid down in the cases of *M'Elderry* v. *Flannagan,* 1 H. & G. 308; *Leopard* v. *Ches. & Ohio Canal Co.,* 1 G. 222; *Jones* v. *Jones,* 45 Md. 154; *Baltimore Elevator Co.* v. *Neal,* 65 Md.

459; *Mallette* v. *British Assn. Co.,* 91 Md. 481; *Moyer* v. *Justis,* 112 Md. 222, and other cases.

The defendant municipality opened this street about two years prior to the happening of the accident, leaving the said stump in the bed of the street, at that time partially relieved of its dangerous features by the dirt that was piled around it, but which was naturally to become more dangerous as the dirt wore away from it by the use of vehicles upon the street. The dangerous condition of the stump at the time of the accident had existed for at least six months prior thereto, how much longer the record does not disclose, and its condition was known to those who traveled upon such highway, as disclosed by the evidence of the above named witnesses.

The law is well settled that the municipality cannot be made liable in any case unless it be shown that it had actual or constructive notice of the bad condition of the street. By constructive notice is meant such notice as the law imputes in the circumstances of the case. It is the duty of the municipal authorities to exercise an active vigilance over the streets; to see that they are kept in a reasonably safe condition for travel. They cannot fold their arms and shut their eyes and say they have no notice. After a street has been out of repair so that the defect has become known and notorious to those traveling the street, and there has been full opportunity for the municipality through its agents charged with that duty, to learn of its existence and repair it, the law imputes to it notice and charges it with negligence. *Todd* v. *City of Troy,* 61 N. Y. 509; *Keen* v. *Havre de Grace,* 93 Md. 39; *Miller* v. *United Ry. & Elec. Co.,* 108 Md. 95.

In this case the officers of the defendant corporation knew of the stump in the street at the time the street was opened and they permitted it to remain there, subject to the natural changes in its physical condition produced by vehicles passing over it in the use of the street, for two years and until the accident occurred. In the exercise of an active vigilance in keeping the street in a reasonably safe condition for pub-

lic travel, the officers of the municipal corporation are expected to inspect the streets from time to time and to do what work is found necessary to keep them in such reasonably safe condition. And it is difficult for us to understand, if this was done, how such officers of the corporation, with the knowledge of the existence of the stump in the street, could have failed, in such length of time, to have learned of its dangerous condition here complained of.

It is true, this Court has said, *Keen* v. *Havre de Grace, supra,* that if the defect be of such a character as not to be readily observable, express notice to the municipality must be shown. In this case there is evidence, the evidence of the plaintiff, that it was a hard stump to see; yet it must be remembered that this stump had been in this condition for months, and while hard to see, its presence in the street was brought to the notice of the travelers upon the street by repeatedly coming in contact with it, until it seems its presence there became more or less notorious. And, moreover, it must be borne in mind that the commissioners had actual notice of the existence of this stump in the street, left there by them when the street was opened, and although at such time it might not have seriously endangered the safety of travel upon the street, yet it was liable to become so, and this fact should have been known to them and because of which their attention should have been more or less directed to it in seeing that the street was at all times kept in a reasonably safe condition for travel.

The facts disclosed by the record tending to show that by the exercise of reasonable care and diligence, the officers of the defendant corporation could have learned of the dangerous condition of the street in time to have remedied it and to have prevented the injury complained of, were legally sufficient to go to the jury for such purpose, and the Court committed no error in refusing to grant this prayer of the defendant.

The Court also, in our opinion, committed no error in its ruling upon the defendant's prayer charging the plaintiff with contributory negligence.

To justify a Court in saying that conduct is *per se* contributory negligence, the case must present some such feature of recklessness as would leave no opportunity for difference of opinion, as to its imprudence, in the minds of ordinarily prudent men. *Balto. & O. R. R. Co.* v. *Fitzpatrick,* 35 Md. 46; *Balto. & Potomac R. R. Co.* v. *State, use of Stansbury,* 54 Md. 655; *Cumberland Valley R. Co.* v. *Maugans,* 61 Md. 61; *Balto.& O. R. Co.* v. *Kane,* 69 Md. 21; *Ballo. & O. R. Co.* v. *State, use of Wiley,* 72 Md. 40; *Taxicab Co.* v. *Emanuel,* 125 Md. 246.

What is the negligent or reckless act of the plaintiff in this case? The fact that he was riding upon the load of fodder, which was securely tied to the cart, cannot be regarded as an act of contributory negligence. Upon a cart so loaded this was about the only place that he could have ridden. It is true that in this position he could not have seen the stump at a point so close to his cart as he could had he been riding in an unloaded cart, but we cannot say, as a matter of law, that his riding upon the load of fodder was a negligent act. He was not obliged to walk and drive his horse, to avoid the charge of negligence; but had he done so, the stump on the right side of the road would not probably have been any more readily seen by him from the driver's usual and customary position to the left of the horse, than from the top of the loaded cart. As the plaintiff had seen the stump six months before and not knowing whether or not it had been removed, although he might well have thought that in that time it had, he was looking for it and "was driving the best he could" to avoid it, and in so doing it would seem that he was exercising reasonable and ordinary care, and this was all that was required of him.

We fail to find any negligent act of the plaintiff contributing to the accident, and therefore the Court correctly ruled in refusing this prayer.

We find no errors in the rulings of the Court upon any of the rejected prayers of the defendant, nor in its ruling upon the amendment to its seventh prayer. As to the sixth prayer of the defendant, the amendment is not shown by the record.

The plaintiff's prayers as amended, when considered with the granted prayers of the defendant and in the light of all the facts and circumstances of the case, were, we think, properly granted and the law of the case as presented by the granted prayers, including those of the plaintiff and defendant, was as favorable to the defendant as it was entitled to receive.

This leaves the first and third exceptions to be disposed of.

In the progress of the trial Hudson, a witness, testified that he was in his cart nearby at the time of the accident, that he jumped from his cart, went to the plaintiff, took hold of him and asked him if he were hurt; "he hollered and said 'My thigh is broken all to pieces.' " Although it had permitted, without objection, a previous witness to give a similar answer, the defendant asked that this answer be stricken out, and upon the Court's refusal to strike it out an exception was noted, which is the first exception in this case.

As was said in *Williams* v. *Great Northern Ry. Co.* (Minn.), 37 L. R. A. 202, "Exclamations or expressions which are the spontaneous manifestations of distress, and which naturally and instinctively accompany and furnish evidence of existing suffering, are the natural language of pain; and, whenever its existence at any particular time is a relevant fact, such manifestations of it are always admissible as original evidence, under the ordinary application of the rule of *res gestae*. They are in the nature of verbal facts, and may always be testified to and described by any person in whose presence they were uttered. We take it that it is expressions of this nature to which Mr. Greenleaf refers when he says: "Wherever bodily or mental feelings of an individual are material to be proved, the usual expressions of such feelings, made at the time in question, are also orig-

inal evidence. If they were the natural language of the affection, whether of body or mind, they furnish satisfactory evidence, and often the only proof of its existence, and whether they were real or feigned is for the jury to determine."

In *Atchison, etc., R. Co.* v. *Johns,* 36 Kan. 769, the Court there said: "Whenever evidence is introduced tending to show a real injury or a real cause of suffering or pain, as in this case, the declaration of the party concerning such suffering or pain while it exists and as simply making known an existing fact, should be allowed to go to the jury for what they are worth, and the jury in such a case should be allowed to weigh them and determine their value." *Federal Betterment Co.* v. *Reeves,* 77 Kan. 111, 15 Amer. & Eng. Ann. Cases, 798.

The answer we think was properly admitted as evidence of the plaintiff's pain and suffering at such time. The expression that he had broken his "thigh all to pieces" was to be taken for what it was worth when considered in connection with the other testimony of the case; it was at least indicative of the extent of pain that he was at the time suffering.

Dr. Lynch, a witness offered by the defendant, testified that he saw the plaintiff a short while after the accident and examined his injuries and thereafter paid him eight or ten visits during the succeeding thirteen days; that he was still going upon crutches at the time he stopped visiting him; that he saw nothing during his treatment and examination to cause a permanent injury; "the ligaments were in perfect condition; there was nothing to indicate a fracture or displacement, and there was no shortening, at the time that you usually get from a fracture or displacement of any sort. That there might have been some laceration of the fibres of the hip attached to the femur." He was then asked the following hypothetical question: "Doctor, assuming that Mr. John S. Venables, the plaintiff in this case, was, prior to the injury referred to in the evidence, in good health, with both

legs normal; that on the 22nd day of November, 1913, he was thrown from a loaded wagon which had come suddenly in contact with a stump in the road to the pavement, his body striking the pavement from his knee to his hip, resulting in the condition in which you found him in the evening of the same day, and that he has had no external injury of any kind since that day, and further assuming that one leg is now shorter than the other, and that the short leg has wasted very much in size as compared with the other's size, to what would you attribute that condition?" The question was objected to, but the objection was overruled, and the witness answered, saying, "I haven't seen him since I discharged the case; I couldn't answer that question." He was then asked: "Doctor, would you say that his present condition as I have described it to you is not due to the injury received in the fall?" to which question the defendant objected, but the objection was overruled, and he answered, "No, I wouldn't say it wasn't." It is to the admission of this last answer in evidence that the third exception is taken.

The evidence of the plaintiff showed the facts alleged in the hypothetical question. The witness had previously stated in his examination in chief that he saw nothing during his treatment and examination to cause a permanent injury, and upon cross examination he was asked "Do you say his present condition as I have described it is not due to the injury received in that fall." This, we think, was a proper inquiry upon cross-examination, and the answer thereto was admissible.

We find no errors in any rulings of the Court and we will, therefore, affirm the judgment.

*Judgment affirmed, with costs to the appellee.*