SUN CAB COMPANY ET AL. *v.* EMMA MARTHA REUSTLE

[No. 14, April Term, 1937.]

*Decided May 25th, 1937.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*W. Albert Menchine,* with whom was *James J. Lindsay* on the brief, for the appellants.

*Charles Ruzicka,* with whom were *J. B. Randol Carroll, Allen A. Davis, Jr.,* and *Brown & Brune,* on the brief, for the appellee.

MITCHELL, J., delivered the opinion of the Court.

This is an appeal by the Sun Cab Company, a common carrier, and Lawrence A. Clark, the chauffeur of one of its cabs, from a judgment entered on the verdict of a jury, in favor of the plaintiff in the sum of $2,500, in the Superior Court of Baltimore City, on November 17th, 1936. The suit as originally instituted was against the above-named defendants, and also the Keystone Drive It Yourself System and James Nickens. On November 15th, 1935, a judgment by default for failure to plead was entered against the Keystone Drive It Yourself System, but inquisition on the judgment was not taken. The defendant James Nickens was not summoned, and, upon issue joined on the general issue plea of the Sun Cab Company and Lawrence A. Clark, the case was tried as against the two last-named defendants.

The single exception in the record relates to the ruling of the trial court upon the prayers, and it is stipulated therein that the injuries which the plaintiff sustained were of a permanent nature, as evidenced by the testimony of the physicians on behalf of both the plaintiff and the defendants, which testimony is omitted from the record. It was further stipulated by counsel for the appellants that the sole question to be pressed in this appeal is the propriety of the lower court's refusal to grant the defendants' A and B prayers. The A prayer is a general demurrer to the evidence, and the two prayers will be discussed in the reverse order of their sequence.

The plaintiff, appellee in this court, testified that on Sunday afternoon, July 7th, 1935, she engaged the taxicab of the Sun Cab Company at Fayette and Howard streets, in the city of Baltimore, to take her to the Alameda Boulevard in said city, and that in the course of her trip, while travelling in a northerly direction on Harford Avenue, and just prior to reaching the point of

intersection of said avenue with Biddle Street, the driver of the taxicab, while running "fast," passed another car, causing the taxicab to be steered to his left side of the avenue, as it entered the intersection. It is further shown by the record that, at the point at which the accident occurred, Biddle Street runs east and west; Harford Avenue, south of Biddle Street, runs north, and north of Biddle Street veers northeast; Aisquith Street intersects Biddle Street on the north; Harford Avenue and Aisquith Street forming a triangle on the north side of Biddle Street. The testimony of the plaintiff represents the only evidence produced on her behalf, and, with special reference to circumstances under which the accident happened, is as follows:

"Q. Will you tell the court and the gentlemen of the jury, in your own words, what happened while you were in the taxicab? A. While I was a passenger in the cab, going north on Harford Road, the driver was going very fast; he was cutting in and out of cars, and before we came to the intersection near Biddle Street—Harford and Biddle, he cut around another car—got on the wrong side, and tried to get to the right, and shot across, and then the accident happened—he collided with another machine. Q. What do you mean, 'got on the wrong side'? A. He cut around this car and he was on the wrong side; on the left, and he tried to get on the other side. Q. On the left of what? A. On the left side. Q. Of what? A. Of Harford. Q. Of Harford Avenue? A. Yes, sir. Q. Was any warning given by the taxicab driver before proceeding across Biddle Street? A. No. He speeded across, and he didn't slow down. Q. Did he blow his horn? A. No. Q. Did he slow up? A. No. Q. Can you drive an automobile? A. No. I don't drive, but I know he was going fast."

On cross-examination she testified that there was a great deal of automobile traffic moving along Harford Avenue on the afternoon of the accident; that she did not observe the direction of traffic movements, nor did she observe the automobile driven by the defendant James

Nickens; she was then asked: "Q. Do you know whether you had gotten across Biddle Street when it (the Nickens car) ran into you? A. He (the driver of the taxicab) got on the wrong side and tried to cross over, the taxi, and that is all I know. There was a collision."

In direct conflict with the plaintiff's testimony, Edwin W. Moore, a witness for the defendants, testified that at the time of the accident he was driving a taxicab of the Yellow Cab Company, immediately in the rear of the taxicab in which the plaintiff was a passenger; that at the time the latter cab entered the intersection and started across Biddle Street, it was to the right of the center of Harford Avenue; that the driver was not trying to pass any other car, was traveling at a speed of about twenty miles an hour, slowed down at the intersection and blew his horn, and had crossed the center of Biddle Street when his taxicab was hit by a Plymouth car; that the latter car was driven at a terrific speed, eastwardly on Biddle Street, by Nickens; the Sun cab being struck on its left side at the point at which the front fender and running board join, with such force as to cause it to turn over twice and finally land on the pavement at the northeast corner of Harford Avenue and Biddle Street. This witness further testified that the force of the contact caused the automobile driven by Nickens to turn in the direction opposite to that in which it was being driven at the time of the collision, and that at said time a traffic control at the scene of the accident was not in operation, nor was any traffic officer on duty at the street intersection. With slight variations, two other witnesses to the collision, on behalf of the defendants, corroborated the witness Moore.

It is suggested by the appellants that the failure of the plaintiff to locate the exact position in the street intersection of the taxicab in which she was injured, at the time of the collision, presents a case under which a jury could not render a verdict without speculation or conjecture; and in support of this contention the recent case of *Thompson v. Sun Cab Co.*, 170 Md. 299, 184 A.

576, is cited. In that case, however, the collision occurred between a taxicab and a street pedestrian, and it was not definitely shown by the pedestrian plaintiff, with reference to the street crossing, where or how the accident occurred. The case is not analogous to the one before us; and in addition, it should be borne in mind that in the latter case the relation of carrier and passenger between the plaintiff and defendants is established, and the consequent duty of the carrier to exercise a higher degree of care for the safety of the passenger is fixed. *Gardner v. Boston Elevated R. Co.*, 204 Mass. 213, 90 N. E. 534; *Stewart Taxi-Service Co. v. Spencer*, 149 Md. 635, 646, 132 A. 153, 157; *Brune, Motor Vehicle Law*, sec. 87; *Mazzei v. Bennett*, 141 A. 11, 6 N. J. Misc. 317; *McKellar v. Yellow Cab Co.*, 148 Minn. 247, 181 N. W. 348; *Anderson v. Yellow Cab Co.*, 179 Wis. 300, 191 N. W. 748; *Carlton v. Boudar*, 118 Va. 521, 88 S. E. 174, 4 A. L. R. 4180; *Berry, Automobiles* (6th Ed.) sec. 1959.

The statutory right of way rule provides: "All vehicles shall have the right of way over other vehicles approaching at intersecting public roads from the left, and shall give right of way to those approaching from the right." Code, art. 56, sec. 209, as amended by Laws 1929, ch. 224. The only evidence in the instant case tending to show, with reference to the Sun taxicab, from which direction the automobile with which it collided approached, is that the latter approached from the left. It is further shown that the automobile so approaching was being driven at an excessive speed, one of the witnesses fixing the rate of speed at "between forty or forty-five miles an hour." Under this state of facts, the driver of the defendants' taxicab was not called as a witness. And while that incident cannot be construed to raise a presumption against the defendant taxicab owner, it nevertheless eliminates from consideration testimony which might have proved valuable to the owner in the solution of the question raised by its B prayer. In substance the latter prayer is based upon the theory that the negligence of the defendant Nickens, in the operation of

the automobile which collided with the taxicab in which the plaintiff was a passenger, was the proximate cause of the accident; and the evident reason for the theory is the fact that Nickens approached from the left at an apparent excessive rate of speed. But it cannot be successfully contended that the bare possession of the right of the road justified the driver of the defendant's taxicab in entering the intersection in the face of imminent danger, caused by an automobile approaching from his left.

In the case of *Stewart Taxi-Service Co. v. Spencer, supra,* wherein it was contended that the driver of the defendant's taxicab, in which the plaintiff was injured, was justified in entering a street intersection without paying further attention to a car which at the time of entering the intersection he observed a block away, approaching from his right, and wherein one of the rejected prayers was in effect similar to the prayer now under discussion, it was said: "To support its theory that the driver of a taxicab was justified in crossing * * * without further attention to the car which at the time of entering said avenue he saw * * * one block away, this appellant cites a number of cases. But practically all of them are cases between parties respectively responsible for the colliding cars, and not where a passenger in one of them is injured. Besides, they hold with practical unanimity that the question of negligence was for the jury, and do not hold even under their facts that. it should be decided as a matter of law, as the court was asked to do in this case." And in the recent case of *Sun Cab Co. v. Faulkner,* 163 Md. 477, 163 A. 194, a cab carrying the plaintiff passenger entered a street intersection at which traffic lights were in operation, upon a green light, at what the testimony tended to show to be an excessive rate of speed. While crossing the intersecting street, another cab transporting an injured passenger, accompanied by an officer, the driver of which was instructed by the officer to pass a red light sign at a speed of about twenty miles an hour, came in

collision with the cab first mentioned, resulting in injury to the plaintiff. The suit was brought against both drivers and their employers, the owners of the respective cabs. In the trial of the case below the jury found a verdict in favor of the employer and driver of the car driven under the direction of the officer, and against the employer and driver of the other cab. Upon appeal by the latter employer from the judgment on verdict, this court, in an opinion by Chief Judge Bond, reversed the ruling below and held that the proximate cause of the accident resulting in the plaintiff's injury was the negligence of the driver of the car commandeered by the officer. In that case there was testimony tending to show that the appellant's car, while having the undisputed right of way signal, drove into the intersection of Greene and Fayette Streets at an excessive rate of speed; and in passing upon the facts this court said: "This case is unlike those in which, there being no signals, by lights or by traffic officers, two drivers approaching each other on intersecting streets have the burden of determining which has the right to cross unobstructed by the other. In those cases there is commonly a question of the exercise of due care on the part of one driver or the other in deciding to cross when he did, but in the present case no such question is present. Nor does the case involve the question of care which arises when a driver who has the right of way at a crossing sees ahead of him another driving into the crossing in violation of that right and might avoid collision by yielding it; as stated, the plaintiff's evidence would not admit of a finding that there was any interval of time for such action after the two cabs came within sight of each other across the corner. The only question now to be considered starts from a settled fact that the Sun cab driver clearly had the right of way, and was entitled to drive forward on the assumption that no one would at that time attempt to drive out of Greene Street and across that right of way on Fayette Street. If negligence is found in the rate of speed at which the Sun

cab [the cab in which the plaintiff was riding] was being driven, that fact alone does not, of course, answer the question of liability. The negligence must have been the cause of the collision. *Taxicab Co. v. Hamburger,* 146 Md. 122, 125 A. 914; *United Rys. & Elec. Co. v. Perkins,* 152 Md. 105, 110, 136 A. 50; *Slaysman v. Gerst,* 159 Md. 292, 299, 150 A. 728; *Philadelphia, W. & B. R. Co. v. Stebbing,* 62 Md. 504, 516."

In the above cited case it will be noted that the traffic signals gave the right of way to the appellant's driver, and that, while the evidence tended to show that he entered the intersection at an excessive speed, it showed also that no interval of time elapsed, after he entered the intersection, in which he might have avoided the collision after the two cabs came within sight of each other. In these instances, therefore, that case differs from the one before us, in that under the facts in the latter case there is evidence tending to show that the defendant driver, before he reached the intersection of the streets, cut around another car and at an excessive rate of speed, entered the intersection on his wrong side. There is also evidence tending to show that at the same time the defendant reached the intersection, the car driven by Nickens "was half a block away" approaching at the excessive speed hereinbefore indicated. In other words, the appellant's driver, who under the statutory rule of the road ordinarily had the right of way over Nickens, entered from his wrong side of the avenue; and Nickens entered apparently against the rule of the road—both cars being driven, at the time of the accident, at excessive speeds. Under such conflicting testimony, the court concludes that the question of proximate cause was a question for the jury. It may be added that in *Baltimore v. Terio,* 147 Md. 330, 335, 128 A. 353, 355, in passing upon an issue of proximate cause, Judge Pattison said: "The question of proximate cause of injury is in very many cases difficult of determination. It is not a question of science or legal knowledge, as is said in *Milwaukee & St. Paul Ry. Co. v. Kellogg,* 94 U. S. 469, 24 L. Ed. 256,

but one to be decided upon common sense principles in the light of the surrounding facts and circumstances of the case under consideration. *Pennsylvania Steel Co. v. Wilkinson,* 107 Md. 574, 582, 69 A. 412. And, as said by Judge Alvey in *Baltimore & Potomac R. Co. v. Reaney,* 42 Md. 137, 'the courts do not indulge in refinements and subtleties, as to causation, that would defeat the claims of natural justice.' The true rule is that what is proximate cause of an injury is ordinarily a question for the jury. It is only when the facts are undisputed, and are susceptible of but one inference, that the question is one of law for the court; and whether it will or will not be a question for the jury will depend upon the facts of each case. 22 *R. C. L.* p. 31, and cases cited in note thereto. Involved in the decision of the question whether the negligence or wrongful act of the defendant is the proximate cause of the injury, is the determination of the further question whether the injury complained of was the natural and probable consequence of the defendant's negligence, and whether it was such as might or ought to have been foreseen in the light of attending circumstances. And where it is claimed that the defendant's negligence was not the proximate cause of the injury, because the result could not reasonably have been foreseen, it too is ordinarily a question for the jury whether the result should reasonably have been foreseen. On the other hand, where it clearly appears that no one could, or ought to have anticipated the result of the negligent act, the question of the proximate cause has been held to be a question for the court. 22 *R. C. L.* p. 33, and cases there cited."

It is urged by the appellee that the A prayer of the defendants was improperly offered, because it is claimed that the prayer was not offered until the conclusion of all the evidence in the case, and failed to take into account any evidence offered by the appellants. The prayer is so framed as to limit the court to the plaintiff's evidence only, in passing upon the instruction, and is in form appropriate for instruction at the conclusion of the plain-

tiff's case. Apparently it was not offered until the conclusion of all the testimony in the case, and for this reason was properly rejected. "If offered at the end of the whole testimony, it must be made broad enough to include the testimony introduced on behalf of the defendant, as well as the plaintiff." 2 *Poe, Pl. & Pr.* (5th Ed.) sec. 295-B. But independently of this defect, in view of the testimony in the case, the trial court was correct in submitting the case to the jury. The plaintiff affirmatively testified that the chauffeur of the taxicab was driving fast; that he passed another automobile as he entered the street crossing, and entered the same from the wrong side of the avenue upon which he was proceeding. Standing alone, this evidence was sufficient to present a question for the jury. "A prayer seeking to take the case away from the jury, on the alleged ground of a total failure of evidence to support the plaintiff's case, will not be granted, if there is any evidence, however slight, legally sufficient as tending to prove it, that is to say, competent, pertinent and coming from a legal source, but the weight and value of such evidence will be left to the jury." 2 *Poe, Pl. & Pr.* sec. 295-A; *Hodges v. Baltimore Engine Co.,* 126 Md. 307, 94 A. 1040; *Taxicab Co. v. Emanuel,* 125 Md. 246, 259, 93 A. 807; *Delmar v. Venables,* 125 Md. 471, 477, 94 A. 89; *Taxicab Co. v. Hamburger, supra; Fisher v. Finan,* 163 Md. 418, 163 A. 828; *Southern Hotel Co. v. Hamill,* 142 Md. 321, 120 A. 755.

Finding no error in the court's ruling, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*