SKLAR *v.* SOUTHCOMB ET AL.
SAME *v.* SAME

[No. 92, October Term, 1949.]

*Decided March 9, 1950.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Daniel E. Klein* for Rubin Sklar.

*Hyman Pressman* for Rebecca Sklar.

*Clater W. Smith,* with whom were *Fell & Hartman and Clark, Thomsen & Smith,* on the brief, for appellees.

HENDERSON, J., delivered the opinion of the Court.

These cases arose out of a collision on September 7, 1948 between two automobiles at the intersection of Cold Spring Lane and Dolfield Avenue in Baltimore City. Rebecca Sklar, a passenger in the automobile driven by her husband, Rubin Sklar, brought suit for personal injuries against Charles J. Southcomb, the owner of the other automobile, and his son and agent, Charles Gordon Southcomb, a boy 17 years of age who at the time of the accident was making collections on his father's newspaper route. Charles J. Southcomb and his insurance carrier sued Rubin Sklar for damages to Southcomb's automobile. The cases were consolidated, and at the conclusion of the testimony the court directed verdicts in favor of the Southcombs in each case.

Summarizing the testimony most favorable to the plaintiff, Rebecca Sklar, it was shown that her husband was driving west on Cold Spring Lane in a funeral procession. There were twenty or more cars in line, all having their lights on and with stickers marked "Funeral" on their windshields, proceeding, at a speed of from 15 to 20 miles per hour, about 10 or 15 feet apart. The hearse and the first 14 cars crossed Dolfield Avenue

on a green light, and Sklar followed although the light turned red just before he entered the intersection. He saw two lines of traffic on his left, completely blocking the east side of Dolfield Avenue, heading north. He also saw cars waiting on the west side of Dolfield Avenue, heading south. None of these cars made any effort to move when the light turned.

When Sklar's car was past the center line of Dolfield Avenue, the automobile driven by Gordon Southcomb came north on the west side of Dolfield Avenue around the other waiting cars, at a speed of about 35 miles per hour, and came in contact with the left front of Sklar's car, turning it in a northerly direction. The Southcomb car crossed the intersection, jumped the curb at the northwest corner and came to rest in a filling station there. The whole right side of the Southcomb car was damaged.

Gordon Southcomb testified that he did not see the Sklar car prior to the collision. He testified that he knew it was customary in Baltimore City to allow funeral processions entering an intersection on a green light to proceed even after the light changed. "It is customary to let the funeral go ahead on a red light, you stop." He knew there was a custom for the cars in a funeral procession to have their lights on and to carry stickers. He did not observe the procession crossing Dolfield Avenue. He denied that he was on the wrong side of the street and testified he was not exceeding the speed limit. There was some testimony that Sklar was trying to catch up with the procession.

At the time of the accident the Motor Vehicle law did not authorize funeral processions entering an intersection on a green light to continue through after the light has changed, although such a provision was enacted by chapter 598 of the Acts of 1949, (Code, Article 66½, section 141(f) ). We may assume, without deciding, that Sklar was at fault and violated section 141(c), which provides: "Red alone or 'Stop.' (1) vehicles facing the signal shall stop before entering the nearest crosswalk at an intersection or at such other point as may be in-

dicated by a clearly visible line and shall remain standing until green or 'Go' is shown alone." Cf. section 140(a). However, it is clear that Sklar's negligence could not be imputed to his passenger. *Pennsylvania R. Co. v. State,* 188 Md. 646, 655, 53 A. 2d 562. Nor is it contended that Charles J. Southcomb and his insurance carrier could recover unless Gordon Southcomb, his agent, was free from negligence contributing to the accident, although the rule is otherwise in the case of a bailee. *Price v. Miller,* 165 Md. 578, 169 A. 800.

Section 166(b) of Article 66-½ provides: "No vehicle shall, in overtaking and passing another vehicle or at any other time, be driven to the left side of the roadway under the following conditions: * * * (2) * * * when approaching within 100 feet of or traversing any intersection * * *." In the case at bar there was evidence that Gordon Southcomb violated this provision, and that he also violated the speed limit (Code, Article 66-½, Section 157(c) and (e) ). The appellees contend, however, that this was not the proximate cause of the accident, but that the sole proximate cause was the failure of Sklar to stop when the light changed.

Upon the facts stated we think the question of causation should have been submitted to the jury. When Southcomb attempted to pass the double line of waiting cars his view was obstructed by them and this may tend to explain his failure to observe the funeral procession which was plainly visible to all the other witnesses. Even though the light was in his favor, he was under an obligation to yield the right of way to vehicles already in the intersection. *United States Fidelity & Guaranty Co. v. Continental Baking Co.,* 172 Md. 24, 29, 190 A. 768. His knowledge of the custom should have put him on guard against a situation that was recognized by the other waiting cars, whose failure to move with the change of light was at least some warning that the road was not clear ahead. Conversely, Sklar's action in proceeding after the light changed may have been influenced by the fact that the waiting cars were obviously yielding the

right of way, and his decision to proceed may well have been based on the assumption that no other car would enter the intersection on the wrong side of the street. We do not suggest that Sklar's action was not a contributing cause, but under the circumstances we cannot say that the actions of the favored driver bore no causal relation to the accident as a matter of law.

The appellees rely strongly upon the case of *Sun Cab Co. v. Faulkner*, 163 Md. 477, 479, 163 A. 194, 195. In that case there was a collision between a taxicab, commandeered by a police officer to take an injured man to a hospital, which entered an intersection against a red light, and a taxicab proceeding on a green light at an excessive rate of speed. Neither vehicle had an opportunity to avoid collision after they came within sight across the corner. In denying recovery to a passenger in the favored taxicab against the owner of that vehicle, it was said: "Whatever other consequences the speed might have threatened, it could not be said that it threatened to cause a collision with a cab so coming through. On the contrary, the situation created by it, if left to itself, with all its natural consequences, would have been a safe one; and it was only by the intervention of the independent agency that the collision resulted, an independent agency not set in motion or at all influenced by the driving of the Sun Cab." In the case at bar, however, there are circumstances, other than the speed of the favored car, that may have influenced the driving of the unfavored vehicle.

In *Sun Cab v. Reustle*, 172 Md. 494, 502, 192 A. 292, 295, a taxicab cut around another car and entered an intersection on the wrong side, colliding with a vehicle approaching on the left that failed to yield the right of way. The intersection was not controlled by a traffic light. Both vehicles were moving at an excessive speed. Although it was noted that in *Sun Cab Co. v. Faulkner*, *supra*, the intersection was controlled by a traffic light, the case was distinguished on another ground. It was said: "that case differs from the one before us, in that

under the facts in the latter case there is evidence tending to show that the defendant driver, before he reached the intersection of the streets, cut around another car and at an excessive rate of speed, entered the intersection on his wrong side." It was held that the question of proximate cause of injuries to a passenger in the favored cab was for the jury, as against the owners of both vehicles.

Since we think the question of proximate cause in the cases at bar should have been left to the jury, we shall remand the cases for a new trial.

*Judgments reversed and cases remanded, with costs.*