12553

PRIESTER v. SOUTHERN RAILWAY CO. *ET AL.*

(149 S. E., 226)

*Messrs. Frank G. Tompkins* and *J. W. Manuel,* for appellants,

*Messrs. George Warren* and *Thos. M. Boulware,* for respondent,

January 2, 1929.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This action was brought by the plaintiff, W. H. Priester, in August, 1924, to recover damages alleged to have been sustained by him as a result of personal injuries received by his wife, in a collision between an automobile in which they were both riding and of the defendants' passenger trains at a public crossing, near Valentine, in Hampton County, on July 3, 1921. The action was grounded upon the alleged negligence and recklessness of the defendants in failing to construct and maintain the crossing and the approaches thereto in a proper condition, in failing to keep a proper lookout for traffic over the crossing, and in failing to give the statutory signals. The defendants entered a general denial and also the affirmative pleas of contributory negligence, gross and willful negligence on the part of the plaintiff and his wife, and *res adjudicata*.

The case was tried before Judge John S. Wilson and a jury in February, 1925. At the close of all the testimony, the defendants made a motion for a directed verdict, which motion was refused. The jury found for the plaintiff in the sum of $10,000, whereupon a motion for a new trial was made and overruled. From the judgment entered on the verdict the defendants appeal to this Court.

It will not be necessary to set out the exceptions verbatim. All questions raised by them will be considered under the following assignments: (1) That the trial Judge erred in refusing to direct a verdict for the defendants on the ground that the testimony showed no actionable negligence on their part; (2) that the trial Judge erred in refusing to direct a verdict

for the defendants on the ground that the testimony showed that the collision was caused by the sole negligence of the plaintiff; (3) that the trial Judge erred in refusing to direct a verdict for the defendants on the ground that the testimony showed that the collision was due to gross contributory negligence on the part of the plaintiff and his wife; (4) that the trial Judge erred in refusing to direct a verdict for the defendants on the ground that the issues involved in this case have already been adjudicated and decided in favor of the defendants in a case in the United States District Court; (5) error in refusing to charge certain requests of the defendants.

The first three assignments have to do with negligence in one form or another, and may be considered together. The testimony is voluminous and tedious, and no good purpose would be served by reviewing it. We have examined it very carefully, and find that there is conflicting evidence as to the facts on which conclusions of negligence on the part of the plaintiff or on the part of the defendants might be based by the jury. The decision as to the facts and as to the inference of negligence to be drawn therefrom were correctly submitted to the jury.

The fourth assignment cannot be sustained. The action in the United States Court was brought by Mrs. Priester for damages for personal injuries suffered by her in the collision; the present action was brought by her husband for damages, resulting to him from loss of service and companionship and expenses, suffered by him as a result of the injuries to his wife. It is true that the plaintiff was a party in the Federal Court case, but he was merely a nominal party in accordance with the requirement of law. The causes of action in the two cases are entirely different and distinct, and the judgment in favor of the defendants in an action on one is not a bar to an action on the other. On this point the authorities are practically unanimous. There is no merit in the suggestion that the conditions in

the present case are so abnormal and extraordinary as to bring plaintiff's case under a different rule.

Exception 8 assigns error to the trial Judge in refusing to charge the defendants' third requests as follows:

"I charge you that when an engineer, approaching a road crossing, sees a traveler on a highway slow down or stop his vehicle near the crossing he has a right to suppose that the traveler is going to remain in a place of safety, and the engineer is under no duty to try to stop his engine or bring it under control until he sees that the traveler intends to try to cross in front of the train."

There is no error here. This would have been a charge on the facts. *Irby v. Southern Railway*, 92 S. C., 490, 75 S. E., 793; *Richardson v. N. W. R. Co.*, 124 S. C., 314, 117 S. E., 510. In the last named case the Court, quoted with approval:

"The general rule is well known that questions of fact are to be submitted to the jury, and this includes not only cases when the facts are in dispute, but also when the question is as to inference to be drawn from such facts after they have been determined."

There are several other exceptions involving refusal to charge certain requests of the defendants. Appellants did not argue these exceptions, but we have carefully examined them, and find them without merit.

We have not considered the fifth and fifteenth exceptions, as they are not properly before us. When the case with exceptions was served upon the respondent, he proposed an amendment to exception 5, which was based on a charge of the Judge. This amendment, changing entirely the meaning of the charge, was accepted by the appellants, who thereupon sought to substitute a new exception 5 for the original exception 5 and to add a new exception, No. 15. The question of allowing these amendments to the exceptions came before the trial Judge in his settlement of

the case for appeal. He allowed the new exception 5 and disallowed No. 15. The respondent appealed from this order allowing new exception 5, and the appellants gave notice that upon hearing of the case on appeal they would ask the Supreme Court to consider exceptions 5 and 15 on the ground that they are founded on the merits of the case, and the allowance and consideration of them would be in furtherance of justice.

This matter presents two questions: (1) The authority of the Circuit Judge to make the amendments; and (2) the request that this Court consider the two new exceptions.

We do not think that the Circuit Judge had any authority to say what the exceptions should or should not contain. He certainly had authority to settle the case, but not the exceptions. This principle is well stated in *Crosswell v. Association,* 49 S. C., 374, 27 S. E., 388:

"It is true that the proper practice is to furnish the Circuit Judge with a copy of the exceptions, in order that he may be the better enabled to determine what is necessary to go into the 'case' as a basis for such exceptions, and what should be left out as not pertinent to the points raised by the exceptions; but we do not understand that the Circuit Judge has any power to determine what *the exceptions* shall or shall not contain. * * * In view of the well-settled practice of this Court declared in repeated decisions, that no question will be considered here unless raised by some exception, it would be a fearful power to vest in any Circuit Judge to say what should or what should not be incorporated in the exceptions taken for the purposes of an appeal."

If the appellants' request that this Court consider exceptions 5 and 15 be taken as a motion to be allowed to incorporate additional exceptions in the case, the motion comes too late. If the appellants desired to incorporate additional exceptions in the case, they should have made timely application to this Court, which would then have considered the motion on its merits. But the motion

comes too late when the case has been made up and is ready for hearing in this Court. *Burns v. Gower,* 34 S. C., 160, 13 S. E., 331; *McNamee v. Huckabee,* 20 S. C., 190; *State v. Scheper,* 33 S. C., 562, 11 S. E., 623, 12 S. E., 564, 816.

The judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE WATTS and MR. JUSTICE CARTER concur.

MR. JUSTICE BLEASE (concurring) : In my consideration of this case, I was at first much impressed by the fact, upon which Mr. Justice Cothran so strongly bases his dissenting opinion, that five of the Judges of the Courts of the United States have held that the plaintiff was not entitled to recover on the evidence adduced in the two trials in the United States District Court. On reflection, however, I am reminded that in the trial in a Court of Common Pleas of one of the counties of this State twelve jurors reached the conclusion that the plaintiff was entitled to recover. This view of the jurors in this case was supported also by the finding of the twelve jurors, who heard the first case the first time in the United States District Court. The jurors in the second trial in the United States District Court did not have an opportunity to express their own opinions, as the verdict against the plaintiff was directed by the District Judge, Hon. Ernest F. Cochran, in obedience to the ruling of the Circuit Court of Appeals. Judge Cochran refused on the first trial, when the matter was left entirely to his own determination, to direct that verdict.

The opinions of the Judges of the United States Courts, both as to questions of law and of fact, are entitled to have, and do have, my greatest respect, but their opinions are not binding on me under the Constitution of South Carolina, which I am first of all bound to respect. Under that Constitution and the statute law of this State, I am required to entertain the highest respect for the verdicts of juries rendered in our own Courts.

I am here reminded of what Mr. Justice Marion said in the case of *Chisolm v. Seaboard Air Line Railway*, 121 S. C., 394, 114 S. E., 500, as follows:

"If, as is sometimes intimated, unjust or mistaken verdicts are occasionally rendered by juries on questions like this, the remedy does not lie in usurpation by an appellate Court of the prerogatives of the jury, to whose unanimous judgment our law rightly commits the ultimate solution of these oftentimes difficult questions of mixed law and fact."

MR. JUSTICE COTHRAN (dissenting) : This is an action commenced in August, 1924, by W. H. Priester, the husband of Mrs. M. A. Priester, for damages alleged to have resulted *to him,* from personal injuries sustained *by her,* in a collision between the automobile driven by him, in which both were riding, and a train of the defendant Southern Railway Company at a railroad crossing, near Valentine, in Hampton County on July 3, 1921; his alleged damage consisted in the deprivation "of the comfort, society, connubial relations and aid" of his wife; the acts of negligence alleged were the failure of the railroad company to properly construct and maintain the crossing and approaches, and the careless and reckless management of the train, in violation of common law and statutory duties. The defendants denied the allegations of negligence and recklessness, and interposed as a defense the negligence and gross negligence of each of the occupants of the car in not exercising due care to observe the approach of the train.

Preliminary to a consideration of the present appeal, it may be stated that on July 5, 1921, two days after the collision on July 3, 1921, Mrs. Priester and her husband, W. H. Priester, the plaintiff in the present action, brought an action in the Court of Common Pleas for Hampton County against the Southern Railroad Company for damages on account of personal injuries sustained by her in this same collision. The case was removed to the Federal Court, and was there tried before Hon. H. A. M. Smith, District Judge,

and a jury, resulting in a verdict in favor of Mrs. Priester; by writ of error the case was carried to the Circuit Court of Appeals; and on May 23, 1923, that Court handed down its decision, the opinion being written by Hon. C. A. Woods, United States Circuit Judge, formerly an honored member of this Court, reversing the judgment of the District Court, upon the ground that both lMr. and Mrs. Priester were guilty of gross negligence in the circumstances of the collision. The Court held that Mrs. Priester was not chargable with the negligence of her husband, who was driving the car, but that "she, equally *with her husband,* was guilty of gross contributory negligence, because she had the same opportunity to look out for the train and warn him of its approach," and could not recover. 289 F., 945.

The case was remanded to the District Court for a new trial, and in June, 1924, it was tried before Hon. E. F. Cochran, District Judge, and a jury. That trial resulted in a directed verdict in favor of the defendants; by writ of error the case was again carried to the Circuit Court of Appeals; and on June 15, 1925, that Court handed down a decision affirming the judgment of the District Court. 6 F. (2d), 878. Between the date of the second trial and the decision of the Circuit Court of Appeals, upon the second appeal, the present action was instituted, in August, 1924.

The present case was tried before his Honor, Judge Wilson, and a jury at the February term, 1925, of the Court of Common Pleas of Hampton County, and resulted in a verdict of $10,000 in favor of the plaintiff. From the judgment entered upon this verdict the defendants have appealed.

The facts, as to which there appears to be practically no controversy, were as follows:

Plaintiff and his wife were riding in a Dodge roadster, going from their home in Brunson to the home of Mrs. Priester's father, and they had to cross the Southern Railway track. Mr. Priester was driving, and both were familiar with the crossing, and used it constantly. It was about 10

o'clock in the morning, and the sun shining. Automobile was going west, and the train was traveling north; the public road and the railroad crossing at right angles. The public road was straight for some distance before and after reaching the crossing, and the railroad was straight for at least a mile north and south of the crossing. On the south side of the public road was a small patch of tall corn up to a point 30 feet before reaching the first rail. The right of way was open and clear from the edge of the cornfield to the crossing, and any one could see a train approaching from the south for a half mile or more, if he looked from any point on the public road between the edge of cornfield and the crossing. The public road was level for 15 feet after passing the edge of the cornfield, and then the incline to go over the crossing began, a rise of 3 or 3½ feet in 15 feet. On the right of public road, some 6 feet after passing the edge of cornfield, some dirt had been removed from the edge of the road to put around a signpost. On both sides of the east rail thick boards had been placed. Against these boards earth had been thrown, so as to make the rise and crossing easier. But the earth had been washed or worn away, and the boards and rails were about 4 inches above the level. The road being narrow, driving over where dirt had been removed from the edge of road required care. Automobile had good brakes, and at speed it was traveling could have been stopped instantly. Mr. Priester slowed down, almost to a complete stop, or stopped, the car at the foot of the incline. Then he applied more gas to make the rise, and, when he was within 4 or 5 feet of the first rail he looked to the left, for the first time, and saw the train coming at a rapid rate of speed 50 feet from him. Then Mr. Priester tried to apply the emergency brake, but missed it and applied the clutch. The momentum of the automobile not being sufficient to drive it over the board and first rail, it choked down with the front projecting over the rail. Mr. Priester did not look to the left for train at any time after passing the edge of

the cornfield until he was within 4 or 5 feet of the track. Then he saw the train in plain view. Mrs. Priester did not look at all. She remembers nothing that happened after passing the cornfield. Neither of them saw the train, or looked, or heard its noise, according to their testimony, until Mr. Priester saw it when he was over halfway up incline. Engineer says that he saw Mr. Priester stop at foot of incline, and he thought they saw him and were waiting for train to pass until train was too near for him to prevent collision. Mrs. Priester was injured and her automobile destroyed by the collision. Mr. Priester received no physical injury in the collision.

The exceptions raise four main objections to the validity of the judgment: (1) That the Circuit Judge should have directed a verdict for the defendants upon the ground of the negligence and gross negligence *of the plaintiff* W. H. Priester; (2) that the Circuit Judge should have directed a verdict for the defendants upon the ground of the negligence and gross negligence *of Mrs. Priester,* his wife, upon the injury to whom the action is founded; (3) that the Circuit Judge should have directed a verdict for the defendants upon the ground that a prior judgment in favor of the railroad company, in an action brought by W. H. Priester, and Mrs. Priester, founded upon the injury to Mrs. Priester, was *res adjudicata* upon the right of the plaintiff to recover damages in his behalf as a result of the personal injuries sustained by her; (4) that the Circuit Judge erred in refusing the defendants' third request to charge.

I. *As to the refusal of the Circuit Judge to direct a verdict in favor of the defendants, upon the ground of the negligence and gross negligence of the plaintiff in this action, W. H. Priester.*

It is to be observed that the plaintiff in this case is not suing on account of any direct injury to himself, as a result of the failure of the railroad company to comply with the provisions of the signaling statute; the automobile which

was injured in the wreck belonged to Mrs. Priester, and he sustained no personal injury. His alleged cause of action is at common law, for the loss of the services and society of his wife and the expenses incurred by him in treating her, resulting from the injuries sustained by her in the collision. He is not entitled, therefore, to invoke the peculiar provision of the signaling statute which requires that the contributory negligence of *the person injured by collision at a crossing,* in order to constitute a defense, must be shown to have been gross or willful or a violation of the law. *His action* will be defeated upon proof of a want of due care under the circumstances, *ordinary* negligence, which contributed as a proximate cause of the injury of which he complains.

Certainly one may not be allowed to recover damages on account of a personal injury suffered by another, with whom he sustained a certain relation, when his own negligence contributed as a proximate cause of that injury.

In the case of *Sandel v. State,* 115 S. C., 168, 104 S. E., 567, 13 A. L. R., 1268, an action was brought under Lord Campbell's Act for the benefit of the parents of a child whose death was alleged to have been caused by the negligent and wrongful act of certain agents of the State in the administration of impure antitoxin. Upon the defense of the contributory negligence of the parents, the Court held:

"But where an action for the injury or death of an infant is brought for the benefit of the parents, as in this case, the contributory negligence of the parents, or their agents, is a good defense, because in reason they cannot hold defendant liable to them for the consequences of their own negligence. No one is allowed to take advantage of his own wrong"— citing *Berger v. R. Co.,* 93 S. C., 372, 76 S. E., 1096; *Kilpatrick v. Spartanburg,* 101 S. C., 334, 85 S. E., 775. The *Sandel case* was re-affirmed in *Cirosky v. Smathers,* 128 S. C., 358, 122 S. E., 864, *Wilson v. Clarendon County,* 139 S. C., 333, 138 S. E., 33, and *Crawford v. Simons-Mayrant Co.,* 141 S. C., 333, 139 S. E., 788.

Upon the issue of the negligence of Priester, the analysis of the evidence and the conclusions of Judge Woods appear conclusive (289 F., 947):

"The automobile was the property of Mrs. Priester. Priester drove it when he and his wife were together, but she often drove in his absence. Both frequently drove over the crossing and were familiar with it. At the time of the accident plaintiffs were approaching the railroad from the east on the public road, which crossed the track at a right angle. On the south side of the public road the view of the railroad was shut off by a field of tall corn to a point 33 feet from the track. On the other side of the public road, near the edge of the cornfield, the railroad company had made holes—or, in Priester's language, 'a holey place'—in the public road by digging up earth to fill a hole dug for a sign post. The railroad is higher than the level of the public road, the rise being 3½ feet in 15 feet. On both sides of the east rail thick boards had been placed. Against these boards earth had been thrown, so as to make the ascent and crossing easier. But the earth had been washed or worn away, so that the boards and rails were about 4 inches above the level. From the end of the cornfield, 33 feet from the track, the view of the railroad was clear both ways, and one looking down the track would see a train approaching from the south at least a half mile. The road being narrow, driving across the hole required unusual attention and care. According to the testimony of plaintiffs the approaching train must have been in full view when they reached the end of the cornfield. That neither of them looked south down the track at this point is evident from their own testimony and from the fact that they did not see the train. Priester, after driving to the end of the cornfield, slowed down to pass the holes. He then put on speed to make the rise of 3½ feet and cross the track. Still neither of the plaintiffs saw the train, or looked, or heard its noise. When plaintiffs did finally see the train, almost at the instant that the automobile reached the east rail, it was

within 50 or 60 feet of them. Then Priester attempted to apply the emergency brake, but missed it and applied the clutch. The momentum of the automobile not being sufficient to drive it over the board and first rail, it was 'choked down,' and stopped with the front projecting over the rail. But for this 'choke down,' the automobile probably would have been struck midway of the track and both the plaintiffs would have been killed. * * * The presumption is in favor of due care by a traveler at a crossing because his safety is involved. There is no hard and fast rule of law that under all circumstances due care requires a traveler to look and listen before going on a railroad crossing. But it is well settled that when the railroad company has done nothing to allay his sense of danger, and there are no extraordinary conditions sufficient to distract the attention of a man of ordinary prudence and self-possession from the duty of taking precaution, a traveler will be held guilty of contributory negligence, as a matter of law, when the evidence shows affirmatively beyond dispute that he walked or drove his vehicle on a crossing without taking any precaution whatever to ascertain if a train was approaching. *Railroad Co. v. Houston,* 95 U. S., 697, 24 L. Ed., 542, and numerous cases cited under it in Rose's Notes; *Dernberger v. B. & O. Ry. Co.* (4th Cir.), 243 F., 21, 155 C. C. A., 551; *U. S. Director General of Railroads v. Zanzinger* (C. C. A., 4th Cir.), 269 F., 552, and authorities cited; *Payne v. Blevins* (C. C. A.), 280 F., 310; *Bush v. B. & O. Ry. Co.* (C. C. A., 4th Cir.), 288 F., 845 (filed March 31, 1923).

"The Federal case apparently most like that before us is *Northern Pacific Ry. v. Freeman,* 174 U. S., 379, 19 S. Ct., 763, 43 L. Ed., 1014. There it was held there was no question for the jury, because the undisputed evidence showed that the traveler who was killed took no precaution before going on the crossing. The South Carolina Court, in construing and giving effect to the state statutes above cited, has held to the same rule, namely, that although those in

charge of the train be guilty of negligence or recklessness according to the circumstances, yet the traveler is guilty of gross negligence, and cannot recover if, without excuse, he takes no precaution, when any precaution would have warned him before going on the track and prevented the injury. *Cable Piano Co. v. Southern Ry. Co.*, 94 S. C., 143, 77 S. E., 868; *Drawdy v. Atlantic Coast Line Ry. Co.*, 78 S. C., 374, 379, 58 S. E., 980; *Osteen v. Atlantic Coast Line Ry. Co.* [119 S. C., 438], 112 S. E., 352, 360; *Bain v. Northwestern R. Co.* [120 S. C., 370], 113 S. E., 277; *Chisolm v. Seaboard Air Line Ry. Co.* [121 S. C., 394], 114 S. E., 500. Indeed Section 3222 of the South Carolina Code of 1912 itself, by the strongest implication, provides that, even if the signals are not given, a traveler cannot recover if his own gross negligence has contributed to the injury.

"The condition of the crossing contributed in no way to the accident. For a distance of 33 feet after passing the edge of the cornfield plaintiffs had an unobstructed view of the track for at least a half mile. From the hole where the automobile was slowed down for a distance of at least 15 feet plaintiffs still had the unobstructed half mile view of the track. Neither of them took the obvious precaution of looking. It seems to us impossible to escape the conclusion that the failure to look was gross negligence. Surely it cannot be held that a hole in the road which requires slow driving puts a traveler in such an extraordinary situation as to excuse him from looking down a straight track."

Upon the second trial of the case in the Federal Court upon its remand by the Circuit Court of Appeals, his Honor, Judge Cochran, directed a verdict in favor of the defendants upon the grounds stated in Judge Woods' opinion, and upon appeal to the Circuit Court of Appeals that Court affirmed the direction of a verdict by Judge Cochran, stating [6 F. (2d), 879]:

"We have carefully examined the present record, and fail to find any substantial distinction between the evidence in it and that which we considered some two years ago."

Even if the conclusion of the Circuit Court of Appeals in reference to the contributory negligence of the present plaintiff be not binding upon him in this action (which is by no means conceded, as will appear), the analysis of the evidence and the conclusion based upon the same evidence of Circuit Judge Woods, Circuit Judge Waddill, District Judge Groner, District Judge Cochran, again of Circuit Judges Woods and Waddill and of Circuit Judge Rose, are entitled to the greatest respect.

II. *As to the refusal of the Circuit Judge to direct a verdict in favor of the defendants, upon the ground of the negligence and gross negligence of Mrs. Priester.*

For the same conclusive reasons advanced by Judge Woods, it appears in this case that Mrs. Priester was guilty of gross negligence in the circumstances attending the collision. If so, there can be no question but that the plaintiff in this case would be barred by her contributory negligence.

In *Jackson v. Boston Co.,* 217 Mass., 515, 105 N. E., 379, 51 L. R. A. (N. S.), 1152, there were two cases tried together; the one by Mrs. Jackson to recover damages for personal injuries sustained by her while a passenger on defendant's train, in falling over a suitcase negligently allowed to remain in the vestibule as she entered; the other by her husband for consequential damages resulting to him from the injury to his wife. The trial Court directed verdicts for the defendant in both cases. Upon appeal the Court held that the verdict against Mrs. Jackson was properly directed upon the ground that her fall was due to the haste and crowding of other impatient passengers of which, and of the presence of the suitcase, the carrier had not sufficient notice to guard against. As to the direction of a verdict against Mr. Jackson, the Court held:

"The plaintiff in the second action is not entitled to consequential damages unless his wife, the plaintiff in the first action, can recover for personal injuries suffered while she was a passenger on the defendant's railway."

In *R. Co. v. Honey* (C. C. A.), 63 F., 39, 41, 26 L. R. A., 42, the Court thus stated the question at issue, which is precisely that now confronting the Court:

"In an action brought by the husband against a third party for damages for the loss of the society of his wife, her aid, and surgical attendance, consequent upon physical injuries received by the wife, is the fact that the wife has been guilty of contributory negligence, and the injuries which she received being the result of the concurring negligence of the wife and the third party, a defense?"

In that case, as in the *Jackson case,* there were two cases tried together; the one by Mrs. Honey to recover damages for personal injuries sustained by her while walking in a railroad yard and being struck by a switch engine; the other by her husband for consequential damages, loss of services, society, medical expenses, etc., resulting to him from the injury to his wife. The jury found for the defendant in Mrs. Honey's case upon the ground of her contributory negligence, and for Mr. Honey in his case. (C. C.), 59 F., 423. The Circuit Court of Appeals reversed the judgment in favor of Mr. Honey upon the ground that the contributory negligence of his wife, established by the verdict, barred his recovery, saying, in answer to the question above propounded:

"If a husband is still entitled, under the laws of Iowa— as we have no doubt that he is—to maintain a common-law action for the loss of his wife's services and society, we know of no sufficient reason why he should not be chargeable in such an action with the wife's contributory fault. * * *"

And: "When one person occupies such a relation to another rational human being that he is legally entitled to her society and services, and to maintain a suit for the deprivation thereof, he should not be permitted to recover in such an action if the loss was occasioned by the concurring negligence of the person on whose account the right of ac-

tion is given"—Citing *R. Co. v. Terry*, 8 Ohio St., 570; *Dietrich v. R. Co.*, 58 Md., 347; *Benton v. R. Co.*, 55 Iowa, 496, 8 N. W., 330; *Pratt Co. v. Brawley*, 83 Ala., 371, 3 So., 555, 3 Am. St. Rep., 751; *Gilligan v. R. Co.* (N. Y.), 1 E. D. Smith, 453.

In *Dietrich v. R. Co.*, 58 Md., 347, it was held that the contributory negligence of a boy 15 years old would bar the father's action to recover for lost services, etc.

In *Pratt Co. v. Brawley*, 83 Ala., 371, 3 So., 555, 3 Am. S. Rep., 751, which was an action by a father for loss of services of his child resulting from an alleged injury to the child by the defendant, the Court held that, if the child was of sufficient age and mentality to be charged with contributory negligence, the father could not recover, saying:

"Whenever the plaintiff derives his cause of action from an injury to a third person, the contributory negligence of such third person is imputable to him, so as to charge him with the consequences."

In 30 C. J., 970, it is said:

"The husband is not entitled to consequential damages for injuries to his wife, where defendant is not guilty of a tort which would give a right of action to the wife."

In *Gardner v. R. Co.*, 204 Mass., 213, 90 N. E., 534, 535, the Court said:

"The second case, in which the husband of the plaintiff in the first suit seeks to recover for the damages caused to him by the injury done to her, stands of course upon the same footing as her own case."

In *Lundergan v. R. Co.*, 203 Mass., 460, 89 N. E., 625, there were two actions tried together; the one by the administratrix of a young man killed at a grade crossing and the other by the father of the young man for loss of services. The jury found for the defendant in both cases. In affirming the judgment in the case of the administratrix, the Court said as to the suit by the father:

"As Lundergan himself was not in the exercise of due care, his father, the plaintiff in the second case, cannot recover for the loss of the son's services. *It is not necessary to discuss this proposition or to cite any authorities in its support."*

In *Savage v. S. S. Co.* (C. C. A.), 185 F., 778, there were two actions tried together; the one by Mrs. Savage, a libel in admiralty against the company for damages on account of a personal injury sustained on board ship and the other by her husband for loss of services, consortium, etc. Recovery was denied Mrs. Savage, and as to the action by her husband it was dismissed, the Court saying:

"Where a wife may not maintain libel for personal injuries, her husband may not maintain a libel for expenses on account of the wife's injuries and for the loss of consortium."

In 13 R. C. L., 1414, it is said:

"It has been held, and this would seem proper on principle, that a wife's contributory fault may constitute a defense to an action by the husband for the loss of her society and the expense of her cure.  *   *   *"

III. *As to the plea of res adjudicata based upon the prior judgment in favor of the defendant in the action brought by Mrs. Priester and W. H. Priester, her husband.*

It is conceded that the right of action in a wife for personal injuries sustained by her on account of an act of negligence on the part of a third person, and the right of action of a husband for loss of services, society, and expenses attending the injury, are separate and distinct causes of action; and that ordinarily, where the wife's action *is by her alone,* a judgment against her claim will not be considered *res adjudicata* in the action brought by the husband. *Womach v. St. Joseph,* 201 Mo., 467, 100 S. W., 443, 10 L. R. A. (N. S.), 140, and note, citing many cases sustaining the general proposition.

They are generally cases from Code states which permit the wife to sue separately; and without exception do not involve the conduct of the husband.

In this state, under Section 357 of the Code of Civil Procedure 1922, it is provided:

"When a married woman is a party, *her husband must be joined with her,* except * * * (instances not here applicable)."

He is, therefore, in a case like the present, *a necessary party;* and it is difficult to perceive why a necessary party should not be bound by all of the proceedings had in the case, including the final judgment.

The general rule is thus expressed in 20 R. C. L., 662:

"The object of making a person a party to a legal proceeding is to enable him to be heard in the assertion of his rights, and failing to set them up that he may be concluded from again litigating them."

The Code provision is mandatory, that the husband *must be joined* as a party plaintiff to an action of tort in the interest of the wife; there is no limitation in the statute which would affect the application of the general rule that all parties to an action are concluded by its adjudication. There must have been some good reason for requiring the joinder. No other at present is conceived than that the husband, by reason of his right to damages for the loss of the services and society of his wife, and the expense of attending to her injuries, inflicted by the negligence of another, has a direct interest in the result of her claim; to protect that interest he is required to be before the Court as a party plaintiff, and necessarily is concluded by the result of that action.

As a matter of common knowledge, it is the husband who institutes the action, who employs counsel, who is consulted in the preparation for trial, who herds the witnesses, who attends the trial as the most interested and most assiduous party in its conduct, who is a witness in the case, who di-

rects the appeal in the event of an adverse decision, and who foot the bills. In the case at bar the record shows that he was an actual participant in the petition for a writ of error from the Circuit Court of Appeals to the District Court wherein his Honor, Judge Cochran, directed a verdict for the defendants and participated in the prosecution of that writ to its fateful termination.

In the case of *Robbins v. Chicago,* 4 Wall., 657, 18 L. Ed., 427, a person was held bound by an adjudication of an action to which he was not in fact even a formal party, upon this principle announced by the Court:

"Parties in that connection include *all who are directly interested in the subject-matter, and who had a right to make defense, control the proceedings, examine and cross examine witnesses, and appeal from the judgment.* Persons not having those rights substantially are regarded as strangers to the cause, but *all who are directly interested in the suit and have knowledge of its pendency,* and who refuse or neglect to appear and avail themselves of those rights, are equally concluded by the proceedings."

In the case at bar W. H. Priester was not only a party to the suit, but "he was directly * * * interested in subject matter"; he was a co-plaintiff, and had the right to support his wife's claim, to control the proceedings, to produce, examine and cross examine witnesses, *and to appeal from the judgment,* which he actually did. It is not necessary to suggest that as plaintiff, and as the husband of his wife, he had notice of the trial; he in fact attended it and appeared as a witness for his wife and himself.

The question whether a former judgment between the same parties can be considered *res adjudicata* in a subsequent action between the same parties upon a different cause of action received considerable attention in the case of *Johnston-Crews Co. v. Folk,* 118 S. C., 470, 111 S. E., 15. In that case it was decided that, where the same parties were involved in both cases and the identity of the causes of action

appeared, "the former adjudication is conclusive, not only to the precise issues raised and determined, but such as might have been raised affecting the main issue"; but that, where the parties were the same in the two cases, and the identity of the causes of action did not appear, "any issue appearing upon the record or by extrinsic evidence to have been adjudicated in the former suit, is conclusive upon the parties in a subsequent action."

These propositions were sustained by a wealth of authorities which need not be repeated; they appear copiously quoted at page 482 of 118 S. C. (111 S. E., 18), of that case.

The case of *Johnston-Crews Co. v. Folk*, 118 S. C., 470, 111 S. E., 15, is cited with approval in *Davis v. Stukes*, 122 S. C., 539, 115 S. E., 814; *Coleman v. Rush*, 123 S. C., 236, 116 S. E., 449; *Broadway v. Rosen*, 124 S. C., 428, 117 S. E., 417; *McConnell v. Davis*, 128 S. C., 111, 122 S. E., 399; *Marion v. Weston*, 128 S. C., 396, 122 S. E., 498; *Hembree v. Bolton*, 132 S. C., 136, 128 S. E., 841; and *Davis v. West Greenville*, filed October 29, 1928, 147 S. C., 448, 145 S. E., 193.

In the case at bar, as between W. H. Priester and the defendants, the identity of parties is complete; the causes of action, however, in the two cases are different; hence the rule of conclusiveness as to matters which might have been litigated, but were not, has no application; the other rule applicable where the identity of the parties appears, but that of the causes of action does not, obtains that "any issue appearing upon the record or by extrinsic evidence to have been adjudicated in the former suit is conclusive upon the parties in a subsequent action."

The plaintiff, a party to the action instituted by himself and Mrs. Priester for the injury sustained by her, was specifically advised by the answer of the defendant that both he and she were charged directly with negligence as a proximate cause of the collision. The allegations of the answer were put in issue by the complaint, under Section 431 of

the Code. The case was fought out upon that issue mainly, and the final decision of the Circuit Court of Appeals was that both the plaintiff here and his wife were guilty of such negligence as barred a recovery by him, if he had been suing in his own right, and by her for whom the action was brought.

The conclusion seems inevitable that the plaintiff is bound by the former adjudication that he was guilty of negligence, which, of course, precludes his right to recover under the *Sandel case,* and by the former adjudication that Mrs. Priester was guilty of negligence, which precluded her right to recover, and, under the authorities above cited, precludes his right to recover by reason of the injury sustained by her.

The respondent insists that the appellants are not entitled to rely upon the judgment in the case of Mrs. Priester as *res adjudicata,* for the reason that, when the case at bar was on for trial, the plaintiff in the former action had appealed from the judgment ordered in favor of the defendant, and that that appeal was then pending.

It is true that, when the case at bar was tried before his Honor, Judge Wilson, in February, 1925, the opinion of the Circuit Court of Appeals upon the appeal taken by Mrs. Priester had not been handed down. (It appears to have been filed June 15, 1925.) But the rule declared by the Federal Court is that the pendency of an appeal does not at all affect the final character of the judgment appealed from, or of its availability as an estoppel by *res adjudicata. Oregonian Co. v. R. Co.* (C. C.), 27 F., 277; *Ransom v. City of Pierre* (C. C. A.), 101 F., 665, citing many cases, including Supreme Court of United States.

IV. *The alleged error of the presiding Judge in refusing the third request to charge submitted by the defendants.*

The request was:

"I charge you that when an engineer, approaching a road crossing, sees a traveler on a highway slow down or stop his

vehicle near the crossing, he has a right to suppose that the traveler is going to remain in a place of safety and the engineer is under no duty to try to stop his engine or bring it under control until he sees that the traveler intends to try to cross in front of the train."

. The request was entirely proper; not a charge upon the facts; bore directly upon the main issue in the case; and should have been allowed.

If the engineer could see the traveler stop or slow down, it follows that the traveler could see the train. It would be only natural under these circumstances, where there was nothing to show incapacity on the part of the traveler, for the engineer to assume that he saw the train and would not attempt to cross the track.

In *Hale v. R. Co.*, 34 S. C., 292, 13 S. E., 537, 538, the Court said:

"Even if he had been standing on the track, where he had no right to be, and where defendant did have a right to move its train, accustomed as he was to visit the depot and telegraph office, he must have known that the tracks were used for shifting trains daily, and the *engineer in charge of the shifting-engine would naturally assume that he would get out of the way.*"

It might as well be said that this declaration of the Court, a matter of law, was a charge upon the facts.

In the case of *Smalley v. R. Co.*, 57 S. C., 243, 254, 35 S. E., 489, 493, which was a case of a person struck by a train upon a trestle, the Court said:

. "For, even if the engineer saw the deceased on the track, he being a careful man apparently in possession of his physical and mental faculties, as he, in the absence of any testimony to the contrary, had a right to presume, he had the right to assume that he would get out of harm's way; and acting on that assumption would be no evidence of negligence, as said both by Mr. Freeman and Judge Elliott in the

passages above quoted. Certainly, it would be no evidence of such gross negligence as would be equivalent to willfulness or wantonness."

The quotation referred to from Judge Freeman contains this expression:

"If the object seen is an intelligent human being, it seems to be generally agreed that the engineer has a right to presume that he will get out of harm's way before the engine reaches him and that it is not negligence to act upon that presumption."

The quotation referred to from 3 Elliott on R. R., § 1253, contains this expression:

"But neither negligence nor willfulness can ordinarily be shown in this way, where an adult, or person apparently able to take care of himself, is upon a railroad track, because the railroad employees have a right to assume, in the absence of anything to the contrary, that he will get off the track, or take such other precautions as may be available to avoid injury to himself." This quotation appears in 3 Elliott on R. R. (3d Ed.), § 1791.

If the Court has the right to make such a statement as this in reference to one struck while upon the track, surely it may not be considered a charge upon the facts when made in reference to one in a safe place outside of the rails.

In *Dix v. R. Co.,* 98 S. C., 492, 82 S. E., 798, it was held that the conductor of a train running backwards in the absence of anything to indicate the contrary, was entitled to assume that the decedent, who was on the track in front of the train, was in the possession of all his senses, and would get out of the way.

In *Cable Piano Co. v. R. Co.,* 94 S. C., 143, 77 S. E., 868, 869, the Court said:

"As there was nothing to indicate that the driver of the team was not in possession of his faculties, the engineer had

a right to assume that he would exercise them, and not drive upon the track in front of the approaching train."

In *Bauer v. R. Co.*, 156 Ky., 183, 160 S. W., 933, it was held, quoting syllabus:

In an action for injuries to a pedestrian, struck by an engine on a railroad crossing, an instruction that those in charge of the engine were under no duty to check or stop it unless plaintiff's conduct when they saw or by ordinary care could have seen him, was such as to lead an ordinarily prudent person to believe that he did not know of the approach of the engine, and intended to go or remain on the track, but that it was their duty to make an effort to stop the engine when they saw or by ordinary care could have seen that fact, was proper."

"Under ordinary circumstances however, unless it appears that he is an infant or infirm, or that for some reason he cannot get out of the way, they may assume that he will do so." 3 Elliott on R. R. (3d Ed.), § 1445—Citing *R. Co. v. Gladmon*, 15 Wall., 401, 21 L. Ed., 114; *R. Co. v. Lewis*, 141 Ala., 466, 37 So., 587; *R. Co. v. Cronbach*, 12 Ind. App., 666, 41 N. E., 15; *R. Co. v. Meyers*, 136 Ind.; 242, 36 N. E., 32; *Daly v. R. Co.*, 105 Mich., 193, 63 N. W., 73; *Bunyan v. R. Co.*, 127 Mo., 12, 29 S. W., 842.

The Priesters and their counsel appear to regard this case as an exception to the rule declared by Macbeth:
" * * * The times have been
That when the brains were out, the man would die,
And there an end."

The judgment of this Court should be that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for the entry of a judgment in favor of the defendants under Rule 27; at least that the judgment be reversed and the case remanded for a new trial for error in refusing the defendant's third request to charge.